My name is Michael Weston. I'm the attorney for Carey Travel, Brad Carey and Celeste Carey, the appellants in this matter. This matter involves frequent flyer miles, and one central fact that underlies everything that we will be arguing about is that a passenger seeking to fly on Alaska Airlines can buy frequent flyer miles, pay a fee to a broker, use those frequent flyer miles to buy a ticket on Alaska Airlines, and buy a ticket for a price less than Alaska Airlines would charge them. The other important fact is, as recognized by Judge Layden, is what the Careys are really talking about would be very disruptive to the frequent flyer program of Alaska Airlines and of any other airline. The judge asked in our hearing, what happens if Carey and 5,000 just like him, or better yet, eBay or Craigslist become brokery centers for frequent flyer miles of all domestic carriers? Mr. Warren, we have a free market, Your Honor. The court, what happens to those programs? How do they survive? And that is a central issue that was underlying the entire case. Frequent flyer miles started out as a very simple program where an airline went to its best customers and said, you're flying a lot on our program, let me give you the means to fly on our airline with free tickets. And they calculated that some of those frequent flyer miles would not be used. Yes, sir. If there were a free market, it would be more likely that all the miles would be used, so that the economic calculation which went into the frequent flyer miles would be affected. Absolutely. Absolutely. That is by definition the nature of a free market. That is by definition what Section 1 of the Act is, that you have a free market. No one is compelled to enter a free market, are they? No, but our argument is they entered into a free market, and that is the nature of the problem. How did they enter into a market when they have a contract that that's, if you want to have, you can fly on the airline and get no miles, right? Yes. And then you can sign up and you can get miles. Yes. And if you sign up and get miles, then you agree to the terms of the contract, correct? No. No? And why not? And the reason is that in fact there is no contract that is out there. What you have is a set of what they call terms and conditions. Okay, we'll call them terms and conditions then. Which are subject to change by them at any time in any way. For example, you have the right to go through a company called Points.com and buy Alaska Frequent Flyer Marks. Alaska has the right... If you are an Alaskan customer. Yes, sir. Alaska has the right to say, we don't care if your frequent flyer miles were purchased with your money from Points.com, they have a different value. We are going to unilaterally change the value at any time that we want to, in any way we want to. They reserve the right, if you read their terms and conditions, they can say they can change any term, any way. If I go in and pay $500 to Points.com, I do not own those frequent flyer miles, they all belong to Alaska Airlines. Haven't we rejected this argument, panels of this court rejected this precise argument in the Continental Airlines case in 94 and the Transworld Airlines case in 1990? No, Your Honor. I don't believe you have because of the changed nature of the different animal when you address those two courts, two cases. And what I'm talking about specifically is that we are now in a situation that I flew up here on Alaska Airlines. I'm a member of American Airlines Frequent Flyer Club. I could have gotten credit on my American Airlines Frequent Flyer Miles for flying on Alaska. I could have used my American Airlines Frequent Flyer Miles to buy a ticket on Alaska. What does that have to do with this case? Because it changes the nature of what we're dealing with. We're not dealing with Alaska with its customers. We are dealing with a commodity that is being sold on a market. We have two cases, one of them 20 years old, that say that the argument that airlines are perfectly free to adopt frequent flyer programs and to change them in the way they choose. And you're asking us to rule to the contrary, aren't you? Yes, I am. Because of the changed nature. See how many judges are up here? There are three. We're not 11. We can't disregard the prior three-judge panel authority. But our position is the facts have changed so significantly. For example, in 1990, Alaska Airlines was not selling Frequent Flyer Miles through a credit card, I do not believe. Yet today, Alaska Airlines sells half of its Frequent Flyer Miles that are issued to customers through a credit card company, and in a five-year period from 2003 to 2008, realized revenue of $1.1 billion. How does that change anything? What does that have to do with your claims? Our claims? First, we're opposing a motion for summary judgment. It was granted, so we're arguing that there were issues raised. What's the issue? I'm missing it. The issue is whether or not they have a contract. That's one of the issues that we have raised. We also raised that what they have developed since the time of those cases... Who's they? Whether they have a contract? Who's they? I'm sorry. Alaska Airlines, whether Alaska Airlines has a contract with Alaska Airlines. The other issue that is very significant is whether or not agreements between competitors regarding Frequent Flyer Miles and the Supreme Court says Frequent Flyer Miles affect prices in American Airlines versus Rollins. Between American Airlines and, for example, Alaska Airlines, which Alaska Airlines has admitted exists, violate the Sherman Act. Section 1 of the Sherman Act is an agreement between competitors that affect prices. That's another issue that is before the court. Another issue that we have is their claims are barred by statute of limitations. They admitted that their claims were barred by the statute of limitations, so if you even set aside what we're talking about at this point... Would you tell me who they... Excuse me, Your Honor. Alaska admitted through a statement in an affidavit and in their pleadings that they had knew about the claims against carry travel ten years, basically eight years before they filed suit. But are there some of the claims that are within the statute? No. Some of the transactions claims? No. Not a single transaction. The longest statute of limitations that is applicable is six years. Their director of customer loyalty and marketing program says defendants have routinely and persistently violated the terms and conditions and the award tickets issuance requirements over the last ten plus years. Alaska Airlines has spent countless man hours attempting to curtail these abuses. They filed... This was verified on September 21, 2009. That means in the longest statute of limitations... Wait a minute. Are you reading that as saying that everything occurred ten years ago? No. I'm saying that's when they became aware of it under the discovery rule. By their own testimony, they discovered the defendants alleged wrongs over ten years ago. What if the alleged wrong occurred last week? Under Washington law... Excuse me, Your Honor. Under Washington law, this is a... As they say in this declaration, under Washington law, this is a series of events that are continuing activities of the defendants. And under Washington law, the cause of action accrues when they knew of the claim. They knew ten years ago of the claim. They are the ones that said they knew ten years ago of the claim. We didn't even know it at the time we were dealing with this. They filed an affidavit or declaration saying they knew it. So under the law of the state of Washington, a cause of action accrues when a party has a right to apply to the court for relief. Their declaration says they knew about it ten years ago, which makes the filing of the lawsuit, I believe, was eight years, three months, and five days after the claims accrued at the latest. So whether or not anything else applies, every one of their claims against the carriers are barred by statute of limitations and by laches. They admitted it in their own pleadings and in a declaration that was filed. On the issue of the Sherman Act, they also admitted that they have agreements with their competitors regarding frequent flyer miles that relate to prices. Again, what they said is Alaska Airlines competes with other main routes. Alaska has reciprocal frequent flyer participation agreements with certain other airlines, both competitors and non-competitors. The reciprocal frequent flyer agreements enable passengers of one airline to earn miles and reward travel on another airline. That means Alaska Airlines has an agreement with American Airlines so when I fly on Alaska, I can earn X number of miles on American Airlines and vice versa. And the Vanta Trust violation for that arrangement is what? It's price fixing. Section 1 of the Sherman Act. Yes, ma'am, because it relates to prices. Under the Ciccone Vacuum case, you cannot have an agreement that relates to prices and has the tends to fix the prices in any way, regardless of the reason. So you're contending that a cooperative mileage sharing agreement is tantamount to a price fixing agreement? Yes. Is that the basis? In fact, Congress passed a statute allowing code sharing and specifically requires those agreements to be approved by the Department of Transportation and the Department of Justice with a specific concern for antitrust violations. None of the agreements we're talking about here were ever even submitted to the Department of Transportation and the Department of Justice. If they had been, a limited antitrust immunity would have applied. Since they were not, no antitrust immunity applies whatsoever. Time?  Sorry, Your Honor. All right. Good morning, Your Honors. May it please the Court. My name is Steve Fogg. I'm with the Cora Cronin Law Firm here in Seattle, and I represent the plaintiffs and counterplaint defendants, Alaska Airlines. The Court should affirm Judge Layton's decision. Alaska Airlines properly took legal action against the defendants in order to guarantee control of its operation of its mileage plan. That's a fundamental distinction about which we've debated over the past three years that this case has existed. They feel that the airline should not be able to take any control over its system. But as Your Honors have indicated in your colloquy with counsel, those battles have been fought and found Alaska Airlines, like any other manufacturer, has great control over the manner in which it distributes its product, in this case the miles. What the Court found based on what I'm going to say is uncontested evidence, it's evidence out of the mouth of Mr. Carey in the form of emails that were provided through discovery, is that he routinely violated and caused others to violate the contractual terms and conditions. So given those circumstances, Alaska was entitled to invoke the protections of the law to protect its mileage program. The approach taken by my friend Mr. Weston in his brief was sort of a kitchen sink approach in terms of there were many assignments of error. I'm not going to discuss all the assignments of error. I'm going to limit myself to the three that I think he just discussed. Statute of Limitations. First of all, that was not raised below to Judge Layton, so you don't have a good record on that, be that as it may. The record that you do have... Well, that was my question, because I couldn't find it. The District Court didn't rule on that, is that correct? That's correct, because it was never raised below. However... Well, if it's not raised below and the District Court didn't rule on it, then in the absence of some extraordinary reason which we haven't heard, it wouldn't be properly here on appeal. Right, and that was the position we took in our briefing. But what I wanted to say in addition to that is you do have in the record, just for example in our supplemental papers at 235, evidence that even after what the history is here in July of 2007 after Alaska exhausted every other means of trying to stop Mr. Carey from violating the terms and conditions, they sent him a very strong letter that's in the record. And the record said, the letter itself is at 294, and it said, look, we're not doing business with you at all. We can't do business with you in the future with respect to the mileage plan. Even after that time you have emails in the record where he's still brokering miles. And the site to that would be 235 is just an example of an email that was brokering miles after the date of this warning letter. So clearly we have violations that were within the statute of limitations. And to the extent that he's making a latches argument which again I think is waived, but clearly there's not the sort of manifest injustice that you'd need to satisfy the burden of proof for that. Moving on to the contract, clearly there's a contract here. They seem to take the fact that Alaska has the right to terminate a contract somehow renders it illusory. That is disposed of by the Omni Group Case 645P2-727, which says as long as there's a period of notice, that doesn't render it illusory. The same thing with respect to the fact that it can be unilaterally modified. The fact that it can be unilaterally modified does not render the contract illusory. So Judge Layton was correct when he found that the contract was not illusory. And with respect to the antitrust arguments, those have in fact been rejected repeatedly. Most recently, you spoke, Judge Hawkins, to cases that took place 10 or 15 years ago. There's a case, Frequent Flyer Depot, which we cited in our papers, just took place a year ago. Mr. Weston was counsel in which these very same arguments, antitrust arguments, were brought to court and they denied cert recently. So there's nothing new here. He talks about the Frequent Flyer reciprocal agreements. Those are, if you look at our papers at SER 197, those are in fact not only disclosed to the Department of Transportation and the Department of Justice, but they have been found to be pro-competitive. So there is no basis to upend Judge Layton's careful analysis here and I'm going to stop unless you all have any questions for me. Thank you. You have one minute for rebuttal even though you did actually take an extra minute and a half. Did you raise the statute of limitations to the district court? Yes, Your Honor. Did you argue it in response to the motion for summary judgment? Yes, and in a... What's the citation on that? Let me pull that for you. Okay. In our reply in support of defendant's motion for summary judgment, docket 223, page 2, item 10, and the... I'm sorry, that is the trial court's judgment explicitly lists the pleadings that we raised the limitations issue. He didn't discuss them at the oral argument, but he said explicitly at the oral argument and in his judgment, you will see... Why don't we do this? Your time has now expired. We have a piece of paper that the clerk has for supplemental citations and that will give you an opportunity before you leave Seattle this morning to provide on that piece of paper the specific citation and we'll take a look at that. Thank you. Thank both counsel for your argument and briefing. Alaska Airlines v. Cary is submitted.
judges: Hawkins, McKeown, Bea